**UNITED STATES of America**

v.

**Jonny Lamont SANDERS.**

**No. Civ.A.3:96CV267WS.**
**No. Crim. 3:93–CR–66WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

May 4, 1999.

Jonny Lamont Sanders, Memphis, TN, plaintiff pro se.

Victoria May, U.S. Attorney's Office, Jackson, MS, for United States of America, defendant.

## *ORDER DENYING MOTION TO VACATE OR MODIFY SENTENCE*

WINGATE, District Judge.

Before the court is the motion of the defendant Jonny Lamont Sanders to vacate or modify his sentence pursuant to Title 28 U.S.C. § 2255.[1] The defendant argues that his 10-year sentence should be vacated or reduced because his guilty plea was involuntary, unknowing, and the result of ineffective counsel. The defendant also argues that this court erred when it accepted the stipulation of the parties that 980 marijuana plants were seized by authorities when the defendant was arrested. The defendant refers to this stipulation as being based on "tainted" evidence because plants without roots may have been included in the count. Finally, defendant says that his trial counsel rendered ineffective assistance when he failed to suppress evidence seized at the defendant's home pursuant to a warrantless search.

The United States suggests that this petition is procedurally barred because the defendant agreed in his Memorandum of Understanding with the United States that he would waive his right to appeal his sentence and any right to seek post-conviction relief in exchange for the United States' promise not to prosecute the defendant as a felon in possession of a firearm. Otherwise, says the United States, the defendant presents no justification for the granting of habeas corpus relief in this case.

## I. *BACKGROUND*

The defendant was convicted in this court on January 24, 1994, of manufacturing in excess of 100 plants[2] of marijuana in violation of Title 21 U.S.C. § 841(a)(1)[3] and was sentenced to serve 120 months (10 years) in the custody of the United States Bureau of Prisons pursuant to Title 21 U.S.C. § 841(b)(1)(B)(vii).[4] The defendant's ten-year sentence was based upon his knowing and voluntary plea of guilty to the charge of manufacturing over 100 marijuana plants and upon his prior conviction on July 26, 1989, for selling cocaine. In exchange for the defendant's guilty plea, and pursuant to his agreement to waive both the right to appeal his sentence and the right to raise a post-conviction habeas corpus challenge to his conviction and sentence, the United States dismissed its charge against the defendant under Title 18 U.S.C. § 922(g)(1)[5] which prohibits a convicted felon from possessing a firearm of any kind.

1. Title 28 U.S.C. § 2255 provides in pertinent part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move to vacate, set aside or correct the sentence."

2. The *Memorandum of Understanding* reflecting the agreement between the defendant and the United States contains a stipulation that 980 marijuana plants were found growing at the defendant's residence.

3. Title 21 U.S.C. § 841(a)(1) provides in pertinent part that "[I]t shall be unlawful for any person knowingly or intentionally to manu-

facture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."

4. Title 21 U.S.C. § 841(b)(1)(B) provides in pertinent part that, "[i]n case of a violation of subsection (a) of this section involving—(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 100 or more marihuana plants regardless of weight"; .... If any such person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than ten years .... (emphasis added).

5. Title 18 U.S.C. § 922(g) provides in pertinent part that, "[i]t shall be unlawful for any person—(1) who has been convicted in any court of a crime punishable by imprisonment

The defendant thereafter moved for modification of this sentence pursuant to Title 18 U.S.C. § 3582,[6] contending that Amendment 516 to United States Sentencing Guidelines § 2D1.1(c), became effective November 1, 1995, and was given full retroactive effect, if applicable, in accordance with § 1B1.10 of the Sentencing Guidelines which authorizes sentence reductions where guidelines are amended during a defendant's term of imprisonment. Amendment 516 changed the "equivalency" rating for marijuana offenses under Title 21 U.S.C. § 841(b)(1). Prior to Amendment 516, the Sentencing Guidelines followed the statutory equivalency rating of one marijuana plant equals one kilogram of marijuana. See United States Sentencing Guidelines § 2D1.1(c)(4) (1994); and Title 21 U.S.C. § 841(b)(1)(A)(vii) (1994). Amendment 516, however, reduced the equivalency to one plant equals 0.1 kilogram or 100 grams of marijuana. The defendant asked this court to apply Amendment 516 and reduce his sentence, notwithstanding that the weight of the marijuana plants in his possession at the time of his arrest had no bearing on his sentence. This court found that the defendant was sentenced pursuant to the applicable statutory minimum under Title 21 U.S.C. § 841(b)(1)(B)(vii) for manufacturing over 100 marijuana plants, regardless of weight. This court further found that any argument contending that the weight

of the marijuana was or should be a factor in the defendant's sentence ignored the phrase "regardless of weight" found at Title 21 U.S.C. § 841(b)(1)(B)(vii).[7] Thus, inasmuch as the defendant's sentence was based on a stipulation between the government and the defendant that over 100(980) marijuana plants were being cultivated by the defendant at the time of his arrest, and not upon the weight of some mixture or substance containing marijuana, this court concluded that the weight of the marijuana discovered in the defendant's possession had no bearing on his sentence. Defendant's motion to modify his sentence on this basis was found to be without merit and was denied. Subsequently, the defendant filed the instant petition for habeas corpus relief pursuant to Title 28 U.S.C. § 2255.

## II. THE PLEA AGREEMENT: IS THERE A PROCEDURAL BAR BASED ON DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL RELIEF

The United States contends that this petition is procedurally barred because of the defendant's agreement not to seek collateral relief which is contained in the aforesaid Memorandum of Understanding entered into between the defendant and the United States.

 Plea bargain agreements are "contractual in nature and are to be con-

---

for a term exceeding one year; ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; ...."

6. Title 18 U.S.C. § 3582(c)(2) provides in pertinent part that, "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered ... the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

7. This court relied on *United States v. McMahon*, 935 F.2d 397, 400 (1st Cir.), cert. denied, 502 U.S. 897, 112 S.Ct. 272, 116 L.Ed.2d 224

(1991) (a defendant convicted under 21 U.S.C. § 841(a)(1) is subject to a mandatory five-year minimum sentence—doubled to 10 years where the defendant has a prior felony drug conviction—if the court finds by a preponderance of the evidence that the defendant manufactured or possessed "100 or more marijuana plants regardless of weight." *See* 21 U.S.C. § 841(b)(1)(B)(vii)); and *United States v. Shields*, 49 F.3d 707, 709 (11th Cir. 1995) (21 U.S.C. § 841(b) requires certain minimum mandatory sentences for convictions of controlled substance offenses, based on *either* (I) the weight in kilograms of "a mixture or substance containing a detectable amount of marijuana" *or* (ii) the number of "marijuana plants regardless of weight.")

strued accordingly." *United States v. Moulder,* 141 F.3d 568, 571 (5th Cir.1998), citing *Hentz v. Hargett,* 71 F.3d 1169, 1173 (5th Cir.), *cert. denied,* 517 U.S. 1225, 116 S.Ct. 1858, 134 L.Ed.2d 957 (1996); and *United States v. Ballis,* 28 F.3d 1399, 1409 (5th Cir.1994). An informed and voluntary waiver of post-conviction relief is effective to bar such relief, and the appropriateness of such waivers in proper circumstances is beyond question. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994), citing *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993), *cert. denied,* 508 U.S. 979, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993). However, such waivers may not always apply to collateral attacks based upon ineffective assistance of counsel. *Id.* at 653; and *see United States v. Henderson,* 72 F.3d 463, 465 (5th Cir.1995) (dismissal of an appeal based on a waiver in the plea agreement is inappropriate where the defendant's motion to withdraw the plea incorporates a claim that the waiver was tainted by ineffective assistance of counsel). In view of the exception set forth in *Henderson,* and inasmuch as the defendant's petition claims that he received ineffective assistance of counsel, this court concludes that the petition is not procedurally barred.

## III. DEFENDANT'S CLAIM THAT HIS PLEA WAS INVOLUNTARY

### a. The Plea Agreement was Knowing and Voluntary

The defendant blames his attorney for his guilty plea, contending that counsel should have known that a prior drug-related felony conviction in state court would be used to "enhance" the defendant's sentence. Defendant is referring to the provision of Title 21 U.S.C. § 841(b)(1)(B) (see footnote 4) which provides that the five-year sentence ordinarily imposed under that statute will be doubled to ten years where the defendant has a prior conviction for a felony drug offense which has become final. According to the defendant, counsel and the United States forced the defendant to enter a plea under Title 21 U.S.C. § 841(b) in violation of the defendant's rights under the Fifth [8] and Fourteenth [9] Amendments to the United States Constitution. The defendant contends that he was forced to incriminate himself, and that his guilty plea, as well as his waiver of appeal and post-conviction relief, were unknowing and involuntary because, according to the defendant, he did not know his punishment could be "enhanced" or increased. However, as shall be shown below, the plaintiff knew prior to entering into a plea agreement with the United States that he was charged with manufacturing in excess of 100 plants of marijuana in violation of Title 21 U.S.C. § 841(a)(1); that he also was charged as a convicted felon in possession of a firearm in violation of Title 18 U.S.C. § 922(g)(1); that a sentence of at least thirty years could be imposed if the defendant went to trial and was convicted; and that the United States would recommend a sentence not in excess of ten years if the defendant would enter a guilty plea.

8. The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation."

9. Section 1 of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The defendant offers no evidence to support either his contention that he did not understand the crimes with which he was charged and the possible maximum sentence he faced when he entered his guilty plea, or that he was misinformed regarding these matters by counsel and the United States and forced to enter a plea. Moreover, the transcript of the defendant's plea proceedings undermines these contentions. Prior to the defendant's guilty plea, the following exchanges took place between the court, the United States, and the defendant:

> THE COURT: Now, you and your attorney have been talking to Mr. Dowdy this morning about a potential plea. Then you understand that if there are some aspects of the plea that interest you, then you should pursue it. On the other hand, if you are not interested in it, then, of course, trial will be set for you. And I believe your case is going to be first on the trial calendar. So, you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. And the next thing is you should, as much as possible, try to determine what the appropriate sentence guideline range will be. Now, you might not be able to do it with the same mathematical precision that the probation officer will do it, but you and your attorney should try to get a ballpark figure as to what the guideline range would be so you would know what you are confronted with, you see?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And also, you should know what the recommendation would be and how that would affect the guideline range. Understand that?
>
> THE DEFENDANT: Yes, sir. My attorney and I, we had talked and we got, like I said, a ballpark figure of how much time I would possibly be facing, according to what the point system is based on.

> THE COURT: Okay. So, you have an idea?
>
> THE DEFENDANT: Yes, sir.
>
> \* \* \* \* \* \*
>
> THE DEFENDANT: Your Honor, once again, I didn't realize the magnitude of what I was being faced with. And therefore, if I am looking at magnitude of ten years, .... So, to me, that ten years would be a life sentence.... So, therefore, at this time, I would like to enter a not guilty.
>
> THE COURT: Okay. Now then, Mr. Dowdy?
>
> MR. DOWDY: Yes, sir.
>
> THE COURT: This defendant is charged with what?
>
> MR. DOWDY: He is charged with a violation of Title 21, Section 841, manufacture of marijuana of approximately 980 plants. Count 2 of the indictment charges him being a convicted felon in possession of three firearms.
>
> THE COURT: All right. And if he is convicted on those matters, what is the guideline range?
>
> MR. DOWDY: Judge, if you take into account relevant conduct, the rough calculation that I have come up with is 360 months to life, understanding that's a rough calculation. Based on ... the offer that has been made by the Government at this time, we have limited his exposure to ... at the most, ten years. It could be less than that.
>
> THE COURT: All right. As opposed to, you said, 360 to life?
>
> MR. DOWDY: Yes, sir, Judge. The offer as it stands now is going to give him exposure at the most of about ten years. If we take it to trial, Judge, and we convict him on all counts without acceptance of responsibility or any other recommendations from the Government, he is looking at serving at least thirty years, if convicted.
>
> \* \* \* \* \* \*

THE COURT: ... What I was doing just then, Mr. Sanders, is making sure that you understood what the guideline range could be. That's why I was asking the Government what its determination of the guideline range would be. Now, that's not to say that would be the guideline range. That's what the Government thinks it will be. I will be the final one to decide what that guideline range is. But I wanted you to at least have a notion what the Government thinks about the guideline range and then talk it over with your attorney to see if he agrees that is the potential guideline range you will be confronted with.

\* \* \* \* \* \*

After these exchanges, the defendant and his attorney commenced discussions with the United States regarding the possibility of entering into a plea agreement. Later that same day the discussions bore fruit. The United States announced that the defendant had agreed to enter into a plea agreement. The court called the defendant and his attorney forward and asked:

THE COURT: Mr. Sanders, approach the podium. Mr. Sanders, I understand you signed the memorandum of understanding?

THE DEFENDANT: Yes, sir.

THE COURT: So then, by signing the memorandum of understanding, you have indicated you wish to enter a plea of guilty to Count 1 of the indictment?

THE DEFENDANT: Yes, sir.

\* \* \* \* \* \*

The court began questioning the defendant under oath in accordance with Rule 11 [10] of the Federal Rules of Criminal Procedure, reminding him that he could be prosecuted for perjury if his answers were not truthful. Then, after finding the defendant competent to enter a plea, the court proceeded with the Rule 11 colloquy in pertinent part as follows:

Q. Now, Mr. Sanders, the law requires that you be adequately and competently represented by your lawyer. Now, have you had enough time to discuss your case with your lawyer?

A. As adequately so as possible, I assume.

Q. Are you satisfied with the amount of time you have spent with him?

A. No, sir, not really.

Q. Do you think you need more time to talk to him about these matters?

A. I, at this time, don't think that will change the outcome.

10. Rule 11(c) of the Federal Rules of Criminal Procedure provides in pertinent part that, "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following: (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and (2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and (3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and (4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and (5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement."

Q. Do you need more time to talk to him, though?

A. No, sir.

Q. Do you understand that now is the time to make any complaints at all about the way your attorney has handled your case?

A. Yes, sir, I do.

Q. Do you understand that? Do you have any complaints?

A. None, no, sir.

\* \* \* \* \* \*

Q. Now, do you also understand that if you plead guilty, you will be waiving— you will be waiving your rights not to incriminate yourself? Do you understand that?

A. Yes, sir, Your Honor.

Q. You will be waiving your right not to say you are guilty. You will be waiving your right not to discuss this offense, and you will be giving up that particular right if you decide to plead guilty. You will be testifying against yourself; do you understand that?

A. Yes, Your Honor.

\* \* \* \* \* \*

Q. Now, let me explain the charge to you under Count 1. Do you have a copy of the indictment?

A. Yes, Your Honor.

Q. Have you read it?

A. Yes, sir.

Q. Did you read Count 1?

A. Yes, sir.

Q. Count 1 charges that on April 21, 1993, in Scott County in the Jackson Division of the Southern District of Mississippi that you did knowingly and intentionally manufactured marijuana, a Schedule 1 non-narcotic drug controlled substance; that you cultivated and planted in excess of 100 marijuana plants, specifically 980 such plants, in violation of Section 841(a)(1) of Title 21, United States Code. Did you read Count 1?

A. Yes, Your Honor.

Q. Did you understand what it charges?

A. Yes, Your Honor.

Q. Now, if your case were to go to trial, the Government must prove certain things by proof beyond a reasonable doubt before you could be convicted. Title 21 of the United States Code of Section 841(a)(1) makes it a crime for anyone knowingly or intentionally to manufacture a controlled substance. Of course, marijuana is a controlled substance within the meaning of this law. If the Government is to prevail, the Government must prove to a jury by proof beyond a reasonable doubt the following: First, that you manufactured marijuana. That is, that you cultivated and planted marijuana. Second, that you intended to manufacture marijuana; that you did all this with intent to grow and cultivate marijuana. The term manufacture means the production, preparation, propagation, compounding, or processing of a drug or other substance either directly or indirectly by extraction from substances of natural origin, etc. In this case, manufacture simply means to cultivate and grow. Do you understand that?

A. Yes, Your Honor.

Q. So then, what the Government would have to show is that you grew a substance; that substance was marijuana.

A. Yes, sir.

\* \* \* \* \* \*

**THE COURT:** Now, Mr. Dowdy, what is the maximum punishment for a violation of Count 1 of the indictment?

**MR. DOWDY:** Your Honor, in light of the fact that the United States Attorney, pursuant to Section 851 of Title 21, United States Code, has filed an information with the Clerk of Court setting forth the fact that the defendant has a prior narcotics-related con-

viction, which is a felony in State Court, and under Section 841(b)(1)(b), the maximum penalty for this particular offense would be not less than ten years and not more than life and/or a fine of 4 million dollars, a term of supervised release of at least eight years.

Q. Mr. Sanders, has that been explained to you what the maximum sentence is?

A. Yes, sir.

Q. Do you also understand that you will be required to pay a $50 special assessment fee?

A. Yes, sir.

Q. That's been explained to you, too?

A. Yes, sir.

Q. Has anyone threatened you or told you that you had to come here today to enter a plea of guilty?

A. No, Your Honor.

Q. And are you here entering a plea of guilty freely and voluntarily?

A. Yes, sir.

\* \* \* \* \* \*

■■ Based on the foregoing colloquy, this court finds that the defendant's guilty plea was knowing and voluntary. The defendant attested that he fully understood and voluntarily approved of his plea. Such solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).

Additionally, this court concludes that the defendant fully understood the waiver of his right to bring an appeal and the waiver of his right to bring post-conviction motions pursuant to Title 28 U.S.C. § 2255. During the Rule 11 colloquy, the Assistant United States Attorney read the Memorandum of Understanding aloud so that the defendant could hear all matters to which he had agreed, including the agreement to waive appeal and post-conviction relief:

MR. DOWDY: ... And the defendant also knowingly waives his right to appeal or contest the sentence in any post-conviction proceeding.

THE COURT: Mr. Sanders, did you hear what he had to say?

THE DEFENDANT: Yes, Your Honor.

The defendant, by his own admissions throughout the Rule 11 colloquy, was fully aware of the charges against him, the possibility of facing a thirty-year sentence if found guilty on all counts, and the reduced sentence of no more than ten years that would be recommended by the United States if he entered a guilty plea and waived his right to appeal and to seek post-conviction relief. An informed and voluntary waiver of appeal and post-conviction relief is effective to bar such relief. *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994).

■ Furthermore, where the defendant receives real notice of the true nature of the charges against him, his plea will not be regarded as involuntary. *United States v. Reyna,* 130 F.3d 104, 112 (5th Cir.1997), citing *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976). The Fifth Circuit consistently has held that "a guilty plea would be upheld as voluntary even if the trial judge failed to explain the offense if the record showed that the defendant understood the charge and its consequences." *Reyna,* 130 F.3d at 112, citing *Bonvillain v. Blackburn,* 780 F.2d 1248, 1250 (5th Cir.1986); *Davis v. Butler,* 825 F.2d 892, 893 (5th Cir.1987); and *Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir.1985). The Rule 11 transcript in the instant case indicates that the defendant was fully aware of all the charges against him, and of the consequences, favorable in the instant case, if he entered a guilty plea.

■ A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless

induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). *See also Mabry v. Johnson*, 467 U.S. 504, 509, 510, 104 S.Ct. 2543, 2547, 2548, 81 L.Ed.2d 437 (1984) (explaining that where the plea is not the product of "governmental deception" or "unfulfilled promise," voluntariness and intelligence requirements are satisfied). In the instant case, the record is devoid of any evidence suggesting that the defendant's guilty plea was induced by threats, misrepresentations, or improper promises.

### b. Counsel Rendered Effective Assistance During Plea Negotiations

Finally, this court rejects the defendant's contention that his attorney allowed him to enter his plea blindly and with no appreciation for the consequences. To demonstrate ineffectiveness of counsel in the plea bargaining arena, the defendant must establish that his trial counsel's performance: (1) fell below an objective standard of reasonable competence; and (2) that he was prejudiced by his counsel's deficient performance. *James v. Cain*, 56 F.3d 662, 667 (5th Cir.1995), citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); and *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir.1987). This standard for determining the effectiveness of counsel during a guilty plea proceeding is the same two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir.1994). A defendant must show that counsel's representation fell below an objective standard of reasonableness, and that there is " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ". *Id.* The defendant must affirmatively prove, and not merely allege, prejudice as the result of his attorney's performance. *DeVille v. Whitley*, 21 F.3d at 659, citing *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.) (habeas petitioner has burden of proving that he is entitled to relief), *cert. denied*, 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986). To succeed in showing prejudice, the defendant must show that but for the misadvice of his trial counsel he would not have pleaded guilty and would have insisted on going to trial. *Czere*, 833 F.2d at 63.

There is no such showing of prejudice in the instant case. First, there is no showing that the defendant was misadvised. Secondly, by entering a guilty plea the defendant assured himself that the United States would not pursue Count II of the indictment, thereby reducing the defendant's exposure to incarceration from the thirty-year range to the ten-year range. Clearly, the defendant has demonstrated no prejudice arising from the advice of his attorney concerning his plea. The defendant was fully aware that the United States would recommend a ten-year sentence, and he agreed to this, regardless of the provision contained in 21 U.S.C. § 841(b)(1)(B) that a person violating this statute after a prior conviction for a felony drug offense has become final shall be sentenced to a term of imprisonment which may not be less than ten years. Although the defendant claims that he was not told by counsel that he was waiving his right to appeal and/or to seek post-conviction relief, it is clear that the defendant understood this from the previous reference to the Rule 11 colloquy.

Furthermore, this court already has concluded that the defendant entered a knowing and voluntary plea. Thus, even if his attorney rendered ineffective assistance during the plea negotiations by not specifying the reason for the ten-year sen-

tence, the subsequent conviction will be upheld if the defendant's plea was voluntary. In such a case there is "no actual and substantial disadvantage" to the defense. *See DeVille v. Whitley,* 21 F.3d at 659, citing *United States v. Diaz,* 733 F.2d 371, 376 (5th Cir.1984).

Therefore, the plaintiff has presented no justification for granting habeas corpus relief based on either the contention that his plea was not voluntary or the contention that his attorney rendered ineffective assistance during plea negotiations.

## IV. THE ALLEGATION OF "TAINTED" EVIDENCE

The defendant contends that this court erred when it accepted the stipulation of the parties that there were 980 marijuana plants found by authorities on the day of the defendant's arrest. According to the defendant there could have been no more than fifty plants at that time he was arrested because most of the plants "sprouted after" authorities took possession of them. Defendant argues further that any plants without "root balls" or "root systems" should not be counted for the purposes of sentencing. The defendant has raised this contention for the first time in connection with his petition for habeas corpus relief. This court finds that the defendant's argument on this issue comes too late.

 Following a conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a defendant stands fairly and finally convicted. *United States v. Cervantes,* 132 F.3d 1106,

1109 (5th Cir.1998), citing *United States v. Shaid,* 937 F.2d 228, 231–32 (5th Cir.1991) (en banc), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice. *Id.* Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied,* 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

 The defendant's arguments that marijuana plants without roots [11] should not have been counted toward sentencing, or that the United States failed to prove the number of plants involved in the crime, do not raise either a constitutional or a jurisdictional issue cognizable under § 2255. These are arguments which could have been raised on direct appeal had the defendant gone to trial and been convicted. Instead, the defendant knowingly and voluntarily waived his right to appeal.[12] Section 2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been reached by a direct appeal. *See United States v. Smith,* 32 F.3d 194, 196 (5th Cir.1994); and *United States v. Stumpf,* 900 F.2d 842, 845 (5th Cir.1990); *see also United States v. Seyfert,* 67 F.3d 544, 546 (5th Cir.1995) (defendant's claim raised for first time pursuant to request for habeas corpus relief that

11. For purposes of the sentencing guidelines, a "plant" is an organism having leaves and a readily observable root formation (e.g., a marijuana cutting having roots, a rootball, or root hairs is a marijuana plant). U.S.S.G.S. 2D1.1(c), comment (n. 18). During the Rule 11 colloquy, the defendant admitted that many of the confiscated plants were "seedlings" about two inches high and that he, the defendant, was responsible for planting them. Presumably, root hairs were present on all these plants. Moreover, if only 101 plants

were present, rather than the stipulated number of 980, this would have been a sufficient number to justify the defendant's sentence. Nevertheless, the proper time for contesting this issue is now past.

12. Prior to the defendant's guilty plea, the United States promised to forego prosecuting the defendant for possession of 2000 to 2500 marijuana seeds confiscated along with the 980 plants.

Government failed to prove the quantity of d-methamphetamine, as opposed to 1–methamphetamine, that was contained in the samples of methamphetamine used to calculate sentence did not raise an question of constitutional or jurisdictional magnitude cognizable under § 2255). Therefore, the defendant's "tainted" evidence claim offers no basis for granting habeas corpus relief.

## V. THE INEFFECTIVE ASSISTANCE CLAIM FOR FAILURE TO SUPPRESS EVIDENCE

The defendant assails his attorney's performance because the attorney did not seek to suppress the evidence confiscated when the defendant was arrested. Defendant contends that all the evidence should have been challenged because it was discovered during a warrantless search.

This court, as part of the plea colloquy, informed the defendant that the court would ask the United States to announce what it would rely upon for proof if this matter went to trial. The Assistant United States Attorney announced that on the day the defendant was arrested a United States Forestry Service law enforcement officer went to the property of Mr. Jim Sanders, father of the defendant, and asked permission to enter the property for the purpose of conducting an investigation to determine whether livestock had been trespassing on federal property from that location. Mr. Jim Sanders allowed the officer to search the property. The officer found in plain view an apple crate containing as many as fifty marijuana plants. The officer called for backup and the rest of the incriminating evidence was discovered. The defendant admitted that it was he who was responsible for all the marijuana discovered by law enforcement officers on that day.

Presuming for the moment that the defendant has any standing to challenge the search conducted by the Forestry Service officer on the day in question, this court will find that discovery of the marijuana plants and other evidence was made pursuant to a permissible warrantless search if the Forestry Service officer lawfully entered the property of Mr. Jim Sanders and found the apple crate of marijuana plants in "plain view."

The "plain view" doctrine is one of the "specifically established and well-delineated exceptions" that may justify a warrantless seizure. *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987) ("It is well established that under certain circumstances the police may seize evidence in plain view without a warrant.") The "plain view" doctrine will justify a warrantless seizure if: (1) the officers lawfully entered the area where the items were located; (2) the items were in plain view; (3) the incriminating nature of the items was "immediately apparent"; and (4) the officers had a lawful right of access to the items. *See United States v. Buchanan*, 70 F.3d 818, 825 (5th Cir.1995), citing *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). The incriminating nature of an item is "immediately apparent" if the officer had "probable cause" to believe that the item was either evidence of a crime or contraband. *Buchanan*, 70 F.3d at 825–26, citing *Hicks*, 107 S.Ct. at 1153. Probable cause does not require certainty. *See Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (holding that probable cause "does not demand any showing that such a belief be correct or more likely true than false").

This court concludes that no warrant was required on the day the defendant was arrested and that counsel's performance was not inadequate or ineffective for failing to raise this issue by motion or otherwise. The Forestry Service officer lawfully entered the property of Jim Sanders and discovered the apple crate of marijuana plants lying in plain view. The incriminating nature of his discovery was immediately apparent and he called for

backup. Thus, any motion by the defendant's attorney to suppress the evidence based on failure of the Forestry Service officer to obtain a warrant would have been frivolous. Defendant's attorney will not be found deficient in his performance for failing to press a frivolous point. *See Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir.1995), citing *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990).

## VI. *THE DEFENDANT'S TRAVERSE*

The defendant has submitted a response (traverse) to the reply brief of the United States Attorney wherein he presents four additional issues: (1) that this court erred by refusing to permit the defendant to withdraw his guilty plea; (2) that this court should reduce the defendant's sentence under Amendment 516 to § 2D1.1(c)(4) of the United States Sentencing Guidelines (1994); (3) that counsel was ineffective because he failed to investigate the defendant's prior convictions; and (4) that the procedural bar should not be applied in the instant case.

This court agrees that the defendant's waiver of his rights to appeal and to seek post-conviction relief does not apply to collateral attacks based upon ineffective assistance of counsel, citing *United States v. Henderson,* 72 F.3d 463, 465 (5th Cir. 1995). However, this court applied the bar to the defendant's "tainted" evidence claim.

■■■■ Next, defendant contends that this court should have permitted him to withdraw his guilty plea. Under Rule 32 of the Federal Rules of Criminal Procedure, a district court may, in its discretion, allow a defendant to withdraw a plea of guilty. Rule 32, however, does not provide an absolute right to withdraw a plea. *United States v. Daniel,* 866 F.2d 749, 751 (5th Cir.1989). A motion to withdraw a guilty plea may be granted upon the defendant's showing of "any fair and just reason" for doing so. *See* Rule 32(e) of the Federal Rules of Civil Procedure. The burden of establishing a fair and just rea-

son rests with the defendant. *United States v. Badger,* 925 F.2d 101, 104 (5th Cir.1991). When ruling on a motion to withdraw a guilty plea, the court considers: (1) whether the defendant asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing the motion; (4) whether withdrawal would inconvenience the court; (5) whether adequate assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. *United States v. Henderson,* 72 F.3d at 465, citing *United States v. Carr,* 740 F.2d 339, 343–44 (5th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985).

■■■■ The only reason the defendant submits in support of withdrawing his plea is counsel's failure to investigate his prior convictions and the probability of their enhancing his sentence. This assertion replays the defendant's previous argument that his plea was not voluntary because his attorney did not question that portion of Title 21 U.S.C. § 841(a)(1) which increases a five-year sentence to ten years where the defendant has a prior narcotics-related conviction. This court already has concluded that counsel was not ineffective on that or any other basis presented by the defendant. Moreover, this court finds several of the above-listed factors weigh against the defendant's request to withdraw his plea. The defendant had able counsel present; the guilty plea was knowing and voluntary; withdrawal of the plea would have inconvenienced the court and wasted judicial resources; and the defendant never asserted his innocence of the crimes charged. So, this court finds no basis for withdrawing the defendant's plea either before or after sentencing.

Finally, as previously noted, this court already has rejected by a separate Order dated December 20, 1995 the defendant's request for application of Amendment 516

to § 2D1.1(c) of the United States Sentencing Guidelines. The defendant will not be permitted to raise this issue anew in this petition for habeas corpus relief under § 2255.

## VII. *CONCLUSION*

For all the reasons above discussed, this court finds that since none of petitioner's claims has vitality under Title 28 U.S.C. § 2255, the defendant's motion to vacate or modify his conviction for manufacturing in excess of 100 marijuana plants in violation of Title 21 U.S.C. § 841(a)(1) and his sentence of 120 months (10 years) in the custody of the United States Bureau of Prisons pursuant to Title 21 U.S.C. § 841(b)(1)(B)(vii) is not well taken and his request for habeas corpus relief pursuant to Title 28 U.S.C. § 2255 must be denied.

**SO ORDERED AND ADJUDGED.**